**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

KEVIN KNIPP,

      Plaintiff,

v.

WHITING PETROLEUM CORPORATION,
KEVIN S. MCCARTHY,
JANET L. CARRIG,
SUSAN M. CUNNINGHAM,
PAUL J. KORUS,
LYNN A. PETERSON,
DANIEL J. RICE, and
ANNE TAYLOR

      Defendants.

---

**COMPLAINT AND JURY DEMAND
FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**

---

Plaintiff, Kevin Knipp ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Whiting Petroleum Corporation ("Whiting" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), Oasis Petroleum Inc. ("Parent"), merger vehicle New Ohm LLC ("Merger Sub" and collectively with Parent, "Oasis" and collectively with the Company and the Board, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Parent as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 7, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Whiting will become an indirect wholly-owned subsidiary of Oasis. Whiting public stockholders will receive, in exchange for each share of Whiting stock, 0.5774 shares of Oasis Common Stock and $6.25 in cash.

3.      Thereafter, on April 28, 2022, Oasis filed a Registration Statement on Schedule S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Registration Statement describes an insufficient process in which the Board rushed through a sales process in which the Board failed to negotiate a collar mechanism to keep the merger consideration within a range of reasonableness.

5.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act Defendants caused to be filed the materially deficient Registration Statement on April 28, 2022 with the SEC in an effort to solicit Plaintiff to vote his Whiting shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Whiting and Oasis, provided by Whiting and Oasis to the Company's financial advisor Citigroup Global Markets Inc. ("Citi"), and to Oasis's financial advisor Tudor, Pickering, Holt & Co. ("TPH"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Citi and TPH and provided to the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9.      Plaintiff is a citizen of Wisconsin and, at all times relevant hereto, has been a Whiting stockholder.

10.     Defendant Whiting is a leading digital insurance platform in the United States. Whiting is incorporated under the laws of the State of Delaware and has its principal place of business at 1700 Lincoln Street, Suite 4700 Denver, Colorado.  Shares of Whiting common stock are traded on the New York Stock Exchange under the symbol "WLL".

11.     Defendant Kevin S. McCarthy ("McCarthy") has been a Director of the Company at all relevant times. In addition, McCarthy is the Company's Chairman of the Board of Directors.

12.     Defendant Janet L. Carrig ("Carrig") has been a director of the Company at all relevant times.

13.     Defendant Susan M. Cunningham ("Cunningham") has been a director of the Company at all relevant times.

14.     Defendant Paul J. Korus ("Korus") has been a director of the Company at all relevant times.

15.     Defendant Lynn A. Peterson ("Peterson") has been a director of the Company at all relevant times.  In addition, Peterson serves as the Company's Chief Executive Officer ("CEO").

16.     Defendant Daniel J. Rice ("Rice") has been a director of the Company at all relevant times.

17.     Defendant Anne Taylor ("Taylor") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 17 are collectively referred to as the "Individual Defendants."

19.     Defendant Parent an independent exploration and production company, focuses on the acquisition and development of onshore unconventional oil and natural gas resources in the

United States. Parent was founded in 2007 and is headquartered in Houston, TX. Shares of Parent common stock are traded on the NasdaqGS Exchange under the symbol "OAS".

20.     Defendants Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its principal place of business within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

24.     Whiting is an independent oil and gas company, engages in the acquisition, development, and production of crude oil, natural gas, and natural gas liquids primarily in the Rocky Mountains region of the United States. The company sells its oil and gas production to end users, marketers, and other purchasers. As of December 31, 2021, it had interests in 1,917 net productive wells on approximately 539,900 net developed acres, as well as total estimated proved

reserves of 326.0 million barrels of oil equivalent. The company was founded in 1980 and is headquartered in Denver, Colorado.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 3, 2021 Earnings Call announcing its 2021 Q3 financial results, the Company highlighted such milestones as Revenue of  $401 million for the quarter ending September 30, 2021 and Net income (GAAP) of  $198 million or $5.00 per diluted share.

26.     Speaking on these positive results, CEO Defendant Peterson commented on the Company's positive results as follows, "The team continues to execute on our business plan as demonstrated by the substantial cash provided by operating activities of $190 million during the quarter and $526 million for the nine-month period. The Company generated adjusted free cash flow during the quarter of $128 million and $347 million for the nine months ended September 30, 2021. Commodity prices have continued to strengthen during the year and under current prices, the Company expects to continue to generate substantial free cash flow during the fourth quarter and end the year with no debt and positive cash on our balance sheet."

27.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Whiting.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused Whiting to enter into the Proposed Transaction without providing requisite information to Whiting stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants, and was designed with only one concern in mind – to effectuate a transaction with Oasis by any means possible.

30.     Notably, the Registration Statement does not indicate if a special committee of disinterested directors was created to run the sales process.

31.     Furthermore, the Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the stock portion of the merger consideration within a reasonable range.

32.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreements entered into between the Company and Oasis, whether these agreements differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On March 7, 2022, Whiting and Oasis issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **DENVER & HOUSTON--(BUSINESS WIRE)--**Mar. 7, 2022-- Whiting Petroleum Corporation (NYSE: WLL) ("Whiting") and Oasis Petroleum Inc. (NASDAQ: OAS) ("Oasis") today announced they have entered into an agreement to combine in a merger of equals transaction. The combined company will have a premier Williston Basin position with top tier assets across approximately 972K net acres, combined production of 167.8 thousand boepd, significant scale and enhanced free cash flow generation to return capital to shareholders.
>
> Under the terms of the agreement, Whiting shareholders will receive 0.5774 shares of Oasis common stock and $6.25 in cash for each share of Whiting common stock owned. In connection with the closing of the transaction, Oasis shareholders will receive a special dividend of $15.00 per share. The combined company will have an enterprise value of ~$6.0B based on the exchange ratio and the closing share prices for Whiting and Oasis as of March 4, 2022. Upon completion of the

transaction, Whiting shareholders will own approximately 53% and Oasis shareholders will own approximately 47% of the combined company on a fully diluted basis.

Upon closing, Whiting's President and CEO, Lynn Peterson, will serve as Executive Chair of the Board of Directors of the combined company. Oasis' CEO, Danny Brown, will serve as President and Chief Executive Officer and as a member of the Board. The combined company will be headquartered in Houston upon closing but will retain the Denver office for the foreseeable future. The combined company will operate under a new name and is expected to trade on the NASDAQ under a new ticker to be announced prior to closing.

"The combination will bring together two excellent operators with complementary and high-quality assets to create a leader in the Williston Basin, poised for significant and resilient cash flow generation," said Mr. Brown. "Over the last year, both companies have executed a series of deliberate strategic transactions, reducing costs and establishing a leading framework for ESG and return of capital. The combination of the two companies, together with the ongoing momentum from these strategic actions, will accelerate our efforts and ideally position the combined company to generate strong free cash flow, execute a focused strategy and enhance the return of capital."

Mr. Peterson added, "We are bringing together two like-minded companies and cultures through a merger-of-equals transaction. Both organizations have outstanding talent and operational practices that we are excited to integrate to create an even stronger combined company. This is also an exciting and very positive development for the communities in which we operate and the great states of North Dakota and Montana. We look forward to unlocking the enormous potential of our assets and organizations for the benefit of our stakeholders."

**Combined Company Positioned to Succeed in Dynamic E&P Environment**

- **Premier Williston Basin Position with Enhanced Scale and Top Tier Assets**. The combined company will be positioned as a premier operator in the Williston Basin, combining high quality assets with low breakeven pricing operated by an experienced team. The combined company expects to produce 164-169 Mboe/d in 2022.

- **Accretive to Financial Metrics**. The transaction is expected to be accretive to key per-share metrics, including: E&P cash flow, E&P free cash flow, return of capital and net asset value. The combination is also expected to enhance the combined company's credit profile and cost of capital, as it will have enhanced scale and stronger cash flow while maintaining an attractive balance sheet with expected net debt to EBITDAX of ~0.2x at close.

- **Enhances Sustainable Free Cash Flow Profile**. The combined company is expected to generate significant free cash flow from its high-quality assets and disciplined capital spending across a wide range of commodity price scenarios. The combined company expects approximately $1.2B of free cash flow and a reinvestment rate below 40% in 2022 at $85/bbl WTI and $3.50/MMBtu NYMEX gas.

- **Commitment to Enhanced Capital Return Program through Base Plus Variable Dividend Strategy and Share Repurchases**. Shareholder returns will be central to the strategy of the combined company. During the second half of 2022, the combined company will target a return of capital program representing 60% of free cash flow. The combined company is expected to increase its aggregate base dividend at close to ~$25MM per quarter, or $0.585 per share, using variable dividends and share repurchases to return the full targeted amount. Both companies will continue their respective formally announced programs before the transaction closes. The combined company board is expected to establish a formal long-term return of capital program after close. Given the strong assets, significant free cash flow generation, capital discipline and excellent financial position of the organization, this program is expected to provide meaningful returns of capital to shareholders.

- **Delivers Significant Cost Saving and Operational Synergy Opportunity.** Whiting and Oasis shareholders will each benefit from the significant upside potential created from identified administrative and operational cost synergies of $65MM on an annual basis by the second half of 2023. Both companies are industry leaders in operational excellence and will combine best practices to further advance efficiencies across operating expenses and capital expenditures.

- **Strong Financial Position and Relatively Unlevered Balance Sheet at Close.** The combined company will have a peer-leading balance sheet with expected leverage of ~0.2x at close, including the impact of the merger consideration and special dividend. Additionally, the combined company expects to have minimal borrowings under its $900MM borrowing base, resulting in strong liquidity at close. The balance sheet is further bolstered by no near-term maturities.

- **Continued ESG Commitment.** Together, the combined company will continue Whiting's and Oasis' existing ESG efforts, including applying best practices across both companies related to safety, gas capture and emissions reduction.

**Governance and Leadership**

Upon closing, the Board of Directors of the combined company will consist of ten directors, comprising four independent directors from the current Whiting Board, as well as Mr. Peterson, and four independent directors from the current Oasis Board, along with Mr. Brown.

The remainder of the company's leadership team includes Michael Lou, Oasis' CFO, Chip Rimer, Whiting's COO and Scott Regan, Whiting's GC, who will serve in their respective capacities in the combined company.

### Timing and Approvals

The transaction, which is expected to close in the second half of 2022, has been unanimously approved by the boards of directors of both companies. The closing of the transaction is subject to customary closing conditions, including, among others, approval by Whiting and Oasis shareholders.

### *Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicate that Whiting insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Cimarex.

36.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Registration Statement provides the following, it fails to disclose an accounting of how much merger consideration the below holdings will be exchanged for upon the consummation of the Proposed Transaction.

| Name of Beneficial Owner | Shares of Whiting Common Stock Beneficially Owned | Percent of Whiting Common Stock Beneficially Owned(1) | Number of Whiting Warrants Beneficially Owned | Percentage of Whiting Warrants Beneficially Owned(2) |
|---|---|---|---|---|
| Directors and officers prior to the Merger: | | | | |
| Lynn A. Peterson | 70,447 | * | — | — |
| James P. Henderson | 34,854 | * | — | — |
| Charles J. Rimer | 34,775 | * | 3,482 | * |
| M. Scott Regan | 4,326 | * | 1,283 | * |
| Sirikka R. Lohoefener | 1,692 | * | 1,567 | * |
| Janet L. Carrig(3) | 10,081 | * | — | — |
| Susan M. Cunningham(3) | 10,081 | * | — | — |

| | | | | |
|---|---|---|---|---|
| Paul J. Korus(3) | 14,581 | * | — | — |
| Kevin S. McCarthy(3) | 22,581 | * | — | — |
| Daniel J. Rice IV(3) | 25,231 | * | — | — |
| Anne Taylor(3) | 10,081 | * | — | — |
| All directors and officers prior to the Merger (11 persons) | 238,730 | * | 6,332 | * |
| Five Percent Holders prior to the Merger: | | | | |
| BlackRock, Inc.(4) | 2,949,144 | 7.5% | — | — |
| The Vanguard Group, Inc.(5) | 3,942,378 | 10.0% | — | — |
| Wellington Management Group LLP(6) | 3,768,472 | 9.6% | — | — |
| FMR LLC(7) | 5,624,177 | 14.3% | — | |

37.     Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration.  Such awards are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, as follows:

| | Number of Unvested Shares Subject to Whiting RSU Awards (#)(1) | Number of Unvested Shares Subject to Whiting PSU Awards at Target or Maximum Achievement (#)(2) | Total ($) |
|---|---|---|---|
| **Whiting Executive Officer** | | | |
| Lynn A. Peterson | 123,266 | 208,854 | 27,575,900 |
| James P. Henderson | 68,723 | 67,131 | 11,279,973 |
| Charles J. Rimer | 57,564 | 67,131 | 10,353,441 |
| M. Scott Regan | 20,379 | 40,701 | 5,071,439 |
| Sirikka R. Lohoefener | 5,776 | 10,001 | 1,309,966 |

38.     In addition, certain employment agreements with certain Whiting executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, as follows:

| Whiting Named Executive Officer | Cash[1] | Equity[2] | Perquisites/ Benefits[3] | Total |
|---|---|---|---|---|
| Lynn A. Peterson *(President and Chief Executive Officer)* | $3,325,000 | $29,045,900 | $  5,153 | $32,376,053 |
| James P. Henderson *(Executive Vice President Finance and Chief Financial Officer)* | $1,912,500 | $11,279,973 | $ 54,475 | $13,246,948 |
| Charles J. Rimer *(Executive Vice President Operations and Chief Operating Officer)* | $1,912,500 | $10,353,441 | $ 54,475 | $13,320,416 |
| M. Scott Regan *(Vice President, Legal, General Counsel and Secretary)* | $1,600,000 | $ 5,071,439 | $ 58,997 | $ 6,730,436 |

| | | | | |
|---|---|---|---|---|
| Sirikka R. Lohoefener *(Vice President, Accounting and Controller)* | $ 852,600 | $ 1,309,966 | $ 58,970 | $ 2,221,536 |

39.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of Cimarex, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

41.     On April 28, 2022, the Whiting Board and Oasis caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Whether the confidentiality agreements entered into by the Company with Oasis differed from any other unnamed confidentiality agreement entered into

between the Company and potentially interested third parties, and if so, in what way;

b.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Oasis, would fall away;

c.  Why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

d.  Adequate information regarding whether a special committee of disinterested directors was created to run the sales process, including:

  i.  If such a committee was not created, the specific reasoning as to why;

  ii.  If such a committee was created, the identity of the directors who sat on it, as well as the specific powers of that committee;

e.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Whiting's Financial Projections*

43.  The Registration Statement fails to provide material information concerning financial projections for Whiting provided by Whiting and Oasis management and relied upon by

Citi and TPH in their analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading

44.  The Registration Statement should have, but fails to provide, certain information in the projections that Whiting and Oasis management provided to the Board, Citi, and TPH.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45.  With regard to Whiting Projections prepared by Whiting management, the Registration Statement fails to disclose material line items for the following metrics:

    a.  The specific reasoning for utilizing the oil and natural gas assumptions based on (1) New York Mercantile Exchange strip pricing as of March 3, 2022, and (2) Wall Street consensus pricing, as of March 3, 2022 (which we refer to as "Wall Street Consensus");

    b.  Regarding the *Whiting Standalone Forecasts* prepared by Whiting Management, the Registration Statement fails to disclose the material line items for the following metrics:

        i.  Production (MBoe/d), for all assumption cases, including all underlying necessary inputs and assumptions, including: the individual metrics for oil, natural gas and NGLs production;

        ii.  EBITDAX, for all assumption cases, including all underlying necessary inputs and assumptions, including: earnings before interest, taxes, depreciation (and/or depletion), amortization and exploration expense, adjusted for, as applicable, certain non-recurring, non-cash and other items;

    iii. Capital Expenditures, for all assumption cases, including all underlying necessary inputs and assumptions, including: the excluded acquisition capital expenditures with acquisition from Lime Rock Resources in the first quarter of 2022;

    iv. Levered free cash flow, for all assumption cases, including all underlying necessary inputs and assumptions, including: operating cash flow less cash interest expense, cash taxes and E&P;

46. With regard to the Whiting Projections, prepared by Oasis management the Registration Statement fails to disclose material line items for the following metrics:

  a. The specific reasoning for utilizing the oil and natural gas assumptions based on (1) New York Mercantile Exchange strip pricing as of March 3, 2022, (2) Wall Street consensus pricing, as of March 3, 2022 (which we refer to as "Wall Street Consensus"), and (3) a three-year arithmetic average based on WTI and Henry Hub closing prices over the three preceding years as of March 3, 2022;

  b. Regarding the *Whiting Case 1* and *Whiting Case 2* projections prepared by Oasis Management, the Registration Statement fails to disclose the material line items for the following metrics:

    i. Production (MBoe/d), for all assumption cases, including all underlying necessary inputs and assumptions, including: the individual metrics for oil, natural gas and NGLs production;

    ii. EBITDAX, for all assumption cases, including all underlying necessary inputs and assumptions, including: earnings (loss) before interest expense, income taxes, DD&A, exploration expenses and other similar non-cash or non-recurring charges less certain known liability payments;

iii. Levered free cash flow, for all assumption cases, including all underlying necessary inputs and assumptions, including: cash interest expense, cash taxes and E&P and other capital expenditures (excluding acquisition capital).

47.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Citi's or TPH's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Oasis's Financial Projections*

50.     The Registration Statement fails to provide material information concerning financial projections for Oasis provided by Oasis and Whiting management and relied upon by Citi and TPH in their analyses.  The Registration Statement discloses management-prepared financial projections for the Parent which are materially misleading.

51.     The Registration Statement should have, but fails to provide, certain information in the projections that Oasis and Whiting management provided to the Board, Citi, and TPH.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

52.     With regard to Oasis Projections prepared by Whiting management, the Registration Statement fails to disclose material line items for the following metrics:

    a.   The specific reasoning for utilizing the oil and natural gas assumptions based on (1) New York Mercantile Exchange strip pricing as of March 3, 2022, and (2) Wall Street consensus pricing, as of March 3, 2022 (which we refer to as "Wall Street Consensus");

    b.   Regarding the *Oasis Standalone Forecasts* prepared by Whiting Management, the Registration Statement fails to disclose the material line items for the following metrics:

        i.   Production (MBoe/d), for all assumption cases, including all underlying necessary inputs and assumptions, including: the individual metrics for oil and natural gas;

        ii.   EBITDAX, for all assumption cases, including all underlying necessary inputs and assumptions, including: earnings (loss) before interest expense, income taxes, DD&A, exploration expenses and other similar non-cash or non-recurring charges including specifically distributions with respect to the Crestwood Units;

        iii.   Levered free cash flow, for all assumption cases, including all underlying necessary inputs and assumptions, including: cash interest expense, cash taxes and E&P and other capital expenditures (excluding acquisition capital);

53.     With regard to the Oasis Projections, prepared by Oasis management the Registration Statement fails to disclose material line items for the following metrics:

    a.   The specific reasoning for utilizing the oil and natural gas assumptions based on (1) New York Mercantile Exchange strip pricing as of March 3, 2022, (2) Wall Street consensus pricing, as of March 3, 2022 (which we refer to as

"Wall Street Consensus"), and (3) a three-year arithmetic average based on WTI and Henry Hub closing prices over the three preceding years as of March 3, 2022;

b. Regarding the *Oasis Case 1* and *Oasis Case 2* projections prepared by Oasis Management, the Registration Statement fails to disclose the material line items for the following metrics:

i. Production (MBoe/d), for all assumption cases, including all underlying necessary inputs and assumptions, including: the individual metrics for oil, natural gas and NGLs production;

ii. EBITDAX, for all assumption cases, including all underlying necessary inputs and assumptions, including: earnings (loss) before interest expense, income taxes, DD&A, exploration expenses and other similar non-cash or non-recurring charges including specifically the distributions with respect to the Crestwood Units;

iii. Levered free cash flow, for all assumption cases, including all underlying necessary inputs and assumptions, including: cash interest expense, cash taxes and E&P and other capital expenditures (excluding acquisition capital).

54.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

55.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

56.    Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Oasis's true worth (and thus the true worth of the merger

consideration), the accuracy of Citi's or TPH's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Citi*

57.     In the Registration Statement, Citi describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

58.     As an initial matter the Registration Statement does not provide sufficient information as to the inputs and assumptions underlying the Market and Commodity Price Assumptions utilized by Citi in its analyses.

59.     With respect to the *Selected Public Companies Analyses*, the Registration Statement fails to disclose the following:

    a.  The specific metrics for each compared company;

    b.  The specific inputs and assumptions used to determine the following sets of multiple reference ranges as applied to Whiting:

        i.  2022 EBITDAX multiple reference range of 3.6x to 4.4x;

        ii.  2023 estimated EBITDAX multiple reference range of 3.4x to 4.2x;

        iii.  Calendar year 2022 estimated CFPS multiples of 2.5x to 3.0x;

        iv.  Calendar year 2023 estimated CFPS multiples of 2.4x to 2.9x;

        v.  Calendar year 2022 estimated FCF yields of 18.9% to 15.5%;

        vi.  Calendar year 2023 estimated FCF yields of 20.0% to 16.4%;

    c.  The specific inputs and assumptions used to determine the following sets of multiple reference ranges as applied to Oasis;

        i.  2022 EBITDAX multiple reference range of 3.6x to 4.4x;

      ii.   2023 estimated EBITDAX multiple reference range of 3.4x to 4.2x;

     iii.   Calendar year 2022 estimated CFPS multiples of 2.5x to 3.0x;

     iv.   Calendar year 2023 estimated CFPS multiples of 2.4x to 2.9x;

      v.   Calendar year 2022 estimated FCF yields of 18.9% to 15.5%;

     vi.   Calendar year 2023 estimated FCF yields of 20.0% to 16.4%;

60.     With respect to the *Net Asset Value Analysis - Whiting*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized discount rate range as to Whiting of 10.6% to 11.8%;

    b.   The specific unlevered, pre-tax free cash flows that Whiting was forecasted to generate from Whiting's proved developed reserves, drilled uncompleted reserves and undeveloped reserves, as well as the specific inputs and assumptions used to calculate this metric;

    c.   The specific estimated unlevered, pre-tax exploration expenses, non-drilling and completion capital expenditures, corporate expenses and net hedge, and other gains and losses; as well as the specific inputs and assumptions used to calculate this metric;

    d.   The specific cash taxes utilized for Whiting; and

    e.   Whiting's estimated net debt as of January 31, 2022.

61.     With respect to the *Net Asset Value Analysis - Oasis*, the Registration Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized discount rate range as to Whiting of 10.6% to 11.8%;

    b.   The specific unlevered, pre-tax free cash flows that Oasis was forecasted to generate from Oasis' proved developed producing reserves and currently

undeveloped resources, as well as the specific inputs and assumptions used to calculate this metric;

c. The specific unlevered, pre-tax non-drilling and completion capital expenditures, corporate expenses and net hedge and other gains and losses, as well as the specific inputs and assumptions used to calculate this metric;

d. The specific cash taxes utilized for Oasis; and

e. The specific market value of the Crestwood Units utilized; and

f. Oasis's estimated net debt as of January 31, 2022

62.     With respect to the *Wall Street Research Analysts' Price Targets* analysis, the Registration Statement fails to disclose the following:

a. All equity research price targets utilized; and

b. The identities of all equity research analysts utilized.

63.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

64.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Whiting stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by TPH*

65.     In the Registration Statement, TPH describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

66.     With respect to the *Selected Public Companies Trading Analysis*, the Registration Statement fails to disclose the following:

    a. The metrics for each selected company;

    b. The specific inputs and assumptions used to calculate the utilized multiple reference ranges for Oasis of:

        i. 3.25x to 4.00x for 2022E and 2023E EV/EBITDAX**;**

        ii. 16.0% to 20.0% for 2022E and 2023E FCF Yields;

    c. The specific inputs and assumptions used to calculate the utilized multiple reference ranges for Whiting of

        i. 3.00x to 3.75x for 2022E and 2023E EV/EBITDAX;

        ii. 18.0% to 22.0% for 2022E and 2023E FCF Yields;

67.     With respect to the *Net Asset Value Analysis*, the Registration Statement fails to disclose the following:

    a. The specific unlevered, pre-tax free cash flows that Whiting and Oasis were forecasted to generate in the applicable time frame, as well as the specific inputs and assumptions used to calculate this metric;

    b. The specific inputs and assumptions used to determine the utilized discount rate range of 8.5% to 11.0% for each of Oasis and Whiting for both Case 1 and Case 2;

    c. Specifically as to Oasis:

        i. The present value of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, as well as the specific inputs and assumptions used to calculate this metric;

     ii.   The after-tax value of Oasis' limited partnership interest in CEQP in a hypothetical market disposition thereof (based on Oasis management guidance) and the present value of future estimated effects of hedging and receipt of contingent payments, as well as the specific inputs and assumptions used to calculate this metric;

     iii.   The specific value for certain midstream long-haul transport fees and minimum volume commitment shortfall payments utilized;

     iv.   Oasis's Future estimated effects of general and administrative expenses utilized;

     v.   Oasis's Federal and state income taxes utilized;

     vi.   Oasis's Non-drilling and completion capital expenditures utilized;

     vii.   Oasis's net debt as of December 31, 2021;

d.   Specifically as to Whiting:

     i.   The present value of the cash flows generated by the estimated proved developed reserves and undeveloped hydrocarbon resources, as well as the specific inputs and assumptions used to calculate this metric;

     ii.   The present value of future estimated effects of hedging, as well as the specific inputs and assumptions used to calculate this metric;

     iii.   The present value of certain known liability payments, future estimated effects of general and administrative expenses, cash taxes and non-drilling and completion capital expenditures for Whiting, utilized;

     iv.   Whiting's net debt as of December 31, 2021, utilized.

68.    With respect to the *NAV Has/Gets Analysis*, the Registration Statement fails to disclose the following:

a.   The Oasis Expected Synergies, utilized;

     b.   The cash portion of the merger consideration payable to Whiting stockholders, utilized;

     c.   The Oasis special dividend payable to Oasis stockholders, utilized;

     d.   The sum of estimated transaction expenses and other items, utilized

     e.   The specific inputs and assumptions sued to determine the utilized discount rate range of 8.5% to 11.0% as applied to the unlevered cash flows;

     f.   The share count of the pro forma;

     g.   The specific per-share Oasis special dividend payable to Oasis stockholders.

69.    With respect to the *Equity Research Analysts' Price Targets* analysis, the Registration Statement fails to disclose the following:

     a.   All equity research price targets utilized; and

     b.   The identities of all equity research analysts utilized.

70.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

71.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Whiting stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

72.    Plaintiff repeats all previous allegations as if set forth in full herein.

73.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

74.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

75.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

76.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

77.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

78.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

79.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

80.     Plaintiff repeats all previous allegations as if set forth in full herein.

81.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

82.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.

The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

83.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Whiting's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

84.     The Individual Defendants acted as controlling persons of Whiting within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Whiting to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Whiting and all of its employees.  As alleged above, Whiting is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the

statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 9, 2022                          **BRODSKY & SMITH, LLC**

                                   By:      */s/ Marc L. Ackerman*
                                            Marc L. Ackerman
                                            Two Bala Plaza, Suite 805
                                            Bala Cynwyd, PA 19004
                                            Phone: (610) 667-6200
                                            Fax:    (610) 667-9029
                                            Email: mackerman@brodskysmith.com

                                            *Counsel for Plaintiff*